IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED FINANCIAL CASUALTY COMPANY
and PROGRESSIVE NORTHWESTERN
INSURANCE COMPANY,

      Plaintiffs,

vs.                                                                No. CV 12-0867 RB/LAM

LOU SCHMIDT, Personal Representative of
the ESTATE of BRANDI LYNN SCHMIDT,
JERRY WALKER, and JERRY WALKER
J&W PILOT/ESCORT SERVICES,

      Defendants.

**MEMORANDUM OPINION AND ORDER
DISMISSING CASE FOR LACK OF JURISDICTION**

Plaintiffs United Financial Casualty Company and Progressive Northwestern Insurance Company (collectively, "Progressive") filed a complaint against Defendants Lou Schmidt, as Personal Representative for the Estate of Brandi Lynn Schmidt, Jerry Walker, and Jerry Walker J&W Pilot/Escort Services. (Doc. 1). On August 29, 2010, seventeen-year-old Brandi Lynn Schmidt was a passenger in a car that rear-ended a tractor-trailer. All in the car perished, including Ms. Schmidt and her ten to eleven-week-old fetus. Ms. Schmidt's father, Lou Schmidt, in his capacity as Personal Representative of her Estate, demanded policy limits for uninsured/underinsured motorist ("UM/UIM") coverage under Mr. Walker's personal and commercial insurance policies. Mr. Schmidt's claim for coverage rests on his belief that Ms. Schmidt was Mr. Walker's "relative" as defined by the policies. In its complaint, Progressive requested a declaration that Ms. Schmidt was not Mr. Walker's "relative" under the policy.

On September 10, 2012, Mr. Schmidt filed a motion for summary judgment on the coverage issue. (Doc. 8). Concurrent with its response to the motion for summary judgment, Progressive filed an opposed motion to amend its complaint. (Doc. 11; Doc. 12). Progressive conceded the issue presented in its complaint, acknowledging that Ms. Schmidt would likely be deemed Mr. Walker's "relative" under New Mexico law as interpreted by a recent New Mexico Supreme Court decision. In the proposed amended complaint, Progressive seeks a declaration that Mr. Schmidt is required to fully cooperate with it in its investigation into the coverage demand, including providing an examination under oath ("EUO"). (Doc. 11 Ex. A). Progressive also asks this Court to determine the damages to which the Estate is entitled. (*Id.*) Based on the proposed amended complaint, Progressive contends that Mr. Schmidt's motion for summary judgment is moot. (Doc. 12). Mr. Schmidt opposes the amendment, arguing that it is futile and insisting that the Court decide the issue presented in the original complaint. (Doc. 15; Doc. 16). Mr. Schmidt also moved to file a surreply to alert the Court that he and Kathleen Ellsworth, as co-Personal Representatives of Ms. Schmidt's Estate, filed suit against Progressive and additional defendants in the First Judicial District Court for the State of New Mexico on October 26, 2012.[1] (Doc. 21). All of the motions are fully briefed.

The briefing on the motions demonstrates that (1) Progressive does not dispute Ms. Schmidt's status as a "relative" of Mr. Walker and (2) an EUO of Mr. Schmidt was completed. Consequently, the controversies underlying Progressive's original and amended complaints are no longer live, and the Court has been divested of subject matter jurisdiction.

---

[1] The state action requests a determination of damages and asserts claims for breach of contract, insurance bad faith, violation of the New Mexico Insurance Code, and negligent and intentional tort. (Doc. 21 Ex. A). The Court takes judicial notice that, on December 10, 2012, the defendants removed the state lawsuit to federal court. *See Ellsworth v. Progressive N. Ins. Co.*, 1:12-cv-01279-JB-ACT (D.N.M.).

**I.       Legal Standards**

This action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. In pertinent part, the Declaratory Judgment Act states, "In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This language presents two hurdles for a party seeking a declaratory judgment. *See Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989). First, a declaratory judgment plaintiff must present an "actual controversy," a requirement that "the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-28 (2007)). Second, even if a constitutionally cognizable controversy exists, the court's jurisdiction over any declaratory judgment action is discretionary, and the Tenth Circuit has set out a number of case-specific factors that courts are to consider in deciding whether to exercise their statutory declaratory judgment authority. *Id.* (citations omitted).

The first requirement, that there be an actual controversy, cuts to the heart of this Court's constitutional authority to decide a case. *See* U.S. CONST. art. III, § 2 ("The judicial Power shall extend to all Cases . . . [and] Controversies . . . ."). Though declaratory judgments are typically sought before an "injury-in-fact" has occurred, there must be "a substantial likelihood that the plaintiff will suffer future injury: a 'perhaps' or 'maybe' chance is not enough." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) (citations omitted); *see also Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006). The controversy "must be definite and

concrete, touching the legal relations of parties having adverse legal interests.". *Aetna*, 300 U.S. at 240-41. It must also be "real and substantial . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 241. Additionally, the controversy must remain live at "all stages of appellate or certiorari review, and not simply at the date the action is initiated." *Moongate Water Co., Inc. v. Doña Ana Mut. Domestic Water Consumers Ass'n*, 420 F.3d 1082, 1088 (10th Cir. 2005) (quotation omitted). Courts are required to consider the justiciability of a case *sua sponte* to ensure that a declaratory judgment is not an improper advisory opinion. *Id.* (citation omitted). Thus, though neither party has raised justiciability, the Court has an affirmative obligation to consider this jurisdictional requirement before proceeding.

As to the second requirement, the question of whether a court should exercise its power to issue a declaratory judgment in a particular case is left to the sound discretion of the district court. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995) (affirming ruling of *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)); *see also St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995) (citations omitted). In this circuit, courts consider five factors to determine whether to exercise their discretion to hear a declaratory action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980-81 (10th Cir. 2012) (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)) (hereinafter referred to as the "*Mhoon* factors").

## II.   Discussion

One of the benefits of allowing declaratory judgments in insurance disputes is enhancing certainty in the claims adjustment process. *See Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1275 (10th Cir. 1989). The Tenth Circuit has recognized that the justiciability of an insurance contract before a suit matures is important because the overwhelming majority of disputes are resolved by settlement, and settlement is encouraged when uncertainty is reduced. *Id.* (citation omitted). However, if the terms of the insurance agreement are no longer in dispute, then any controversy has become moot.

### a.   Initial Complaint

The initial controversy that brought this case before the Court was a dispute as to the definition of the word "relative." Mr. Schmidt asserted that Ms. Schmidt was Mr. Walker's "relative," as defined by the insurance policies. Progressive contended that Ms. Schmidt did not fit within the policy definition. Subsequently, Progressive conceded the coverage issue "insofar as Brandi Schmidt was a resident relative under the policies issued to Mr. Walker . . . ." (Doc. 11 at 4; *see also* Doc. 12 at 6 ("Progressive has expressly conceded coverage . . . .")). Mr. Schmidt insists that the Court definitively resolve whether Ms. Schmidt was a relative, arguing that Progressive may raise this issue in subsequent proceedings. Unfortunately for Mr. Schmidt, this is Progressive's lawsuit, and Progressive's concession renders the purported controversy moot. As Progressive no longer takes the position that Ms. Schmidt was not a relative of Mr. Walker, there is no real and substantial dispute between the parties. An opinion on the definition of "relative" under the policies would be merely advisory, and this Court is clearly prohibited from entertaining such actions.

### b. Proposed Amended Complaint

The controversy presented in Progressive's proposed amended complaint relates to Mr. Schmidt's obligation to submit to an EUO requested by Progressive. However, it is clear that Mr. Schmidt did submit to an EUO to address damages after his September 7, 2012 demand expired. (Doc. 15 at 6; Doc. 22 at 3). Furthermore, Mr. Schmidt does not dispute that the policies require him to submit to an EUO. (Doc. 15 at 5-8). The question of the reasonableness of Progressive's demands for an EUO regarding damages or the timeliness of Mr. Schmidt's compliance is not raised in Progressive's proposed amended complaint. It merely seeks a declaration that Mr. Schmidt is required to fully cooperate, including providing an EUO and damages information; that the time limit to respond to the policy limits demand be extended; and that Mr. Schmidt's failure to cooperate precludes UIM coverage. (Doc. 11 Ex. A at 6). The fact that Mr. Schmidt did cooperate and provide an EUO renders moot the very issues on which Progressive seeks a declaratory judgment. As such, there is no live case or controversy between the parties.

The Court notes that Progressive's proposed amended complaint also requests, as relief, "a determination of the amount of damages entitled to by [sic] the Estate[.]" (Doc. 11 Ex. A at 6). However, this claim to relief does not salvage the Court's authority to hear this case. First, no facts are pled in the amended complaint that demonstrate a dispute as to the amount of damages or a factual basis on which such a determination could be made. Because no factual basis for Progressive's requested relief is asserted, the complaint would fail to satisfy the pleading requirement of Federal Rule of Civil Procedure 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Second, a determination of the amount of damages is not the sort of determination that is amenable to declaratory judgment. *See* 10B CHARLES ALAN WRIGHT ET AL.R, FEDERAL PRACTICE AND PROCEDURE § 2760 (3d ed. 2013). The amount of damages owed to the Estate is not a declaration of the "rights" or "other legal relations" of the parties, which is all that is permitted under the Declaratory Judgment Act. 28 U.S.C. § 2201(a). Instead, a determination of damages constitutes the central issue in the tort action, which was initiated by the Estate in state court and recently removed to federal court. *See Metro. Prop. & Liab. Ins. Co. v. Kirkwood*, 729 F.2d 61, 62 (1st Cir. 1984) (citations omitted) ("Courts have consistently refused to entertain a declaratory judgment action about insurance coverage when a tort action could resolve the same factual issues.").

### c. Consideration of the *Mhoon* Factors

Even if there were a justiciable controversy, the *Mhoon* factors would counsel this Court to decline jurisdiction over the issue posed in Progressive's proposed amended complaint. As the parties have pointed out, Mr. Schmidt and his co-Personal Representative filed a lawsuit on behalf of his daughter's Estate in state court relating to the conduct of Progressive and Letcher, Golden & Associates, Inc., a New Mexico corporation, in providing insurance coverage following Ms. Schmidt's death. That case involves a plaintiff and a defendant who are not parties to the instant action; otherwise, the parties are identical. No determination of whether the additional plaintiff and defendant are proper parties has yet been made.

The first two *Mhoon* factors, whether the declaratory action would settle the controversy and whether it would serve a useful purpose, "are necessarily driven by the degree of identity of parties and issues in the concurrent proceedings. Without some degree of similarity between the

7

proceedings, a federal declaratory judgment will likely not settle the controversy between the parties, nor would it clarify all the legal relations at issue." *United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002). Any decision on the issue presented in Progressive's proposed amended complaint would settle neither the coverage dispute nor the amount of damages owed. It certainly would not settle the entire controversy encompassed in Mr. Schmidt's complaint. At most, it would provide Progressive with a defense to the claims raised by Mr. Schmidt. Thus, even with the declaratory judgment, various issues of liability and damages would remain undecided. Because Progressive is a party to the removed action, it is likely that the issue presented in the proposed amended complaint will be decided in the removed action along with all other issues of coverage, liability and damages.

Next, the Court finds that neither party has attempted to have their issue decided in a particular court for purposes of procedural fencing or a race to *res judicata*. Of course, the parties have their own preferences for a particular forum, but there is no evidence that either party attempted to manipulate the courts.

Consideration of the final two factors, friction between the state and federal courts and encroachment, is tied to the propriety of Progressive's efforts to remove the state litigation to federal court. As filed, Mr. Schmidt's complaint does not allow for the federal court to assume diversity jurisdiction. However, Progressive contends that the New Mexico corporation was fraudulently joined as a defendant. This Court cannot opine on the jurisdictional issue presented in the other case. Nevertheless, if remand is ordered, any ruling by this Court in the declaratory judgment action would result in friction between the courts and would certainly constitute encroachment on the state proceedings. It is clear that the issue raised in Progressive's proposed amended complaint will be addressed in Mr. Schmidt's action, and a decision in that case will

eliminate the need for a declaratory judgment. Even if the federal court does retain jurisdiction over Mr. Schmidt's action, allowing two cases involving the same parties and subject matter to remain pending would unnecessarily deplete judicial resources. As such, declining jurisdiction in the instant case best serves the interest of judicial economy.

In summary, four of the five *Mhoon* factors weigh in favor of abstention, and the remaining factor is neutral. For the above reasons, the issues presented by this declaratory judgment action would be best left to the parallel proceeding. Were there a justiciable controversy, the Court would decline jurisdiction in an exercise of its discretion under the Declaratory Judgment Act.

### d. Applicability of Priority Jurisdiction Doctrine

Progressive contends that this Court must take jurisdiction over any state court action filed by Mr. Schmidt based on the doctrine of priority jurisdiction. (Doc. 22 at 8-9). However, this doctrine is inapplicable given the procedural tangle presented by both lawsuits. First and foremost, the doctrine of priority jurisdiction only applies if the courts possess concurrent jurisdiction over two actions that were separately filed. *See Cruz v. FTS Constr., Inc.*, 142 P.3d 365, 368 (N.M. Ct. App. 2006) (citing *Valdez v. Ballenger*, 581 P.2d 1280, 1281 (N.M. 1978)). The instant action was first-filed and might be entitled to priority but for the fact that the action presents no live controversy. Because the case is moot, this Court lacks jurisdiction over the first-filed lawsuit and the priority jurisdiction doctrine is inapplicable. Second, even setting aside the mootness issue, it is far from clear that the federal and state courts share concurrent jurisdiction over the two lawsuits. The first-filed action is based on the Declaratory Judgment Act, which authorizes federal court jurisdiction, not state court jurisdiction. The second-filed action is based entirely on state law claims and would only fall within the federal court's

jurisdiction if the parties are diverse. As filed, the parties are not diverse. As previously stated, the propriety of Progressive's attempt to remove the action to federal court has yet to be determined, and it would be inappropriate for this Court to opine on the issue. For these reasons, the priority jurisdiction doctrine is inapplicable.

**THEREFORE,**

**IT IS ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE** for want of subject matter jurisdiction. **IT IS FURTHER ORDERED** that all pending motions are **DENIED AS MOOT**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**